### HENNINGSEN v. WATKINS.

(District Court, E. D. Virginia. June 4, 1896.)

**1. SHIPPING—DEMURRAGE—EVIDENCE OF WAIVER.**
   Where a charter expressly provides the lay days for loading and discharging, and fixes the amount of demurrage to be paid for overtime consumed by the charterer, the owner cannot be held to have waived such provision, except upon clear evidence.

**2. SAME—LIABILITY OF CHARTERER—DELAY IN LOADING.**
   Evidence *held* to sustain a claim for demurrage under the terms of a charter because of the failure of the charterer to have the cargo ready and to load the vessel within a reasonable and customary time.

In Admiralty. Suit for demurrage.

Wm. & Henry Flegenheimer, for libelant.

R. L. Montague, for respondent.

WADDILL, District Judge. This is a libel filed for demurrage, and the question for the determination of the court is whether the libelant is entitled to such demurrage for the detention of the vessel as mentioned in his libel, and, if so, by whom the same should be paid. The libelant relies upon his charter party upon which his vessel contracted to take a cargo of railroad ties from the ports of Richmond and Bermuda Hundreds, Va., to South Amboy, N. J., as the basis of his claim for demurrage. The particular clause in the charter party is as follows:

"The party of the second part [B. T. Watkins] doth engage to provide and furnish to the said vessel a full and complete cargo of oak railroad crossties, under and on deck, and to pay to said party of the first part or agent, for the use of said vessel during the voyage aforesaid, thirteen and one-half cents per tie for each tie delivered. It is agreed that the lay days for loading and discharging shall be as follows: If not sooner dispatched, commencing from the time the vessel is ready to receive or to discharge cargo, and notice thereof given to parties of the second part or their agents, that is to say, as customary, and that for each and every day's detention by the fault of the said party of the second part or agent $50.00 per day, from day to day, shall be paid by the said party of the second part or agent

to said party of the first part or agent. The cargo or cargoes to be received and delivered as per usual custom."

The respondent, in effect, admits the detention of the vessel during the period charged for, but insists that he is not responsible, because the libelant waived the clause in the charter party aforesaid, and agreed, instead of taking cargo, as therein provided for, at the ports of Richmond and Bermuda Hundreds, that if he could be loaded at Richmond he would wait for the ties to be shipped to Richmond by Messrs. W. L. Mason and R. H. Price, who furnished respondent with ties, and that the said Mason and Price agreed to ship the ties promptly if the weather permitted; said ties being at the time in the woods in Amelia county, several miles from the railroad, from which place they were to be hauled in vehicles to the station on the Southern Railroad, and shipped from there to the railroad company's wharf at Richmond.

The question involved is largely one of fact, and turns upon whether or not the waiver in question was made, and a new contract entered into for the loading of libelant's vessel, as claimed by respondent. There is a sharp conflict in the evidence, but, after careful examination of the same, I am convinced that the libelant never for a moment contemplated waiving his contract of affreightment, whereby his cargo was assured, and the loss for demurrage agreed upon, and, in lieu thereof, agreed to accept the hazard of two strangers to the contract getting from the woods, and hauling for the distance of several miles to the depot, the ties in question. The uncertainty of promptly loading was still further increased by the fact that the new arrangement was made dependent upon the failure of rains in the spring season of the year, whereby prompt hauling would have been practically impossible. The proposition upon its face is too unreasonable to be readily accepted, and a critical analysis of the evidence satisfies me that neither party at the time of the transaction contemplated what was said and done having the effect claimed. The respondent chartered libelant's vessel, and it was his duty to have provided a cargo, and when, confessedly, he has failed and neglected to do this, as I think this evidence shows, he should not, except in a perfectly clear case, be allowed to escape responsibility by transferring it to others who ship through and work for him; nor should he be held blameless on a claim for demurrage when he has chosen to contract for and order more vessels than he has either berth room at the wharf for, or cargoes to place upon them. Libelant, after the lay day had expired, had the right to expect his vessel to be loaded in a reasonable time, and respondent assumed the risk of a failure so to do. From the whole evidence (the fact of the absence of the cargo at Richmond for the vessel of the libelant; the failure to provide berth room for her to load; the manner in which the ties were placed on board at Richmond,—only 1,672 in 2 days; the fact that no ties were actually at Bermuda Hundreds, and that after reaching there, although a great delay had occurred at Richmond, 2 days were then frittered away because of the lack of ties; the fact that 18 days in all were consumed, 10 of which were spent at Richmond, when, as a matter

of fact, not more than 7 or 8 days should have been taken in loading), I think the libelant should be allowed demurrage; and the amount named in the charter party, $50 per day, for 6 days, is a reasonable allowance therefor, and a decree may be entered for that amount, to wit, $300, and costs.